NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0192n.06

No. 09-1784

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 29, 2011
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| )   Plaintiff-Appellee,   ) | |
| )   v.   ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| )   NAJIB SHEMAMI,   ) | |
| )   Defendant-Appellant.   ) | |

Before: McKEAGUE and STRANCH, Circuit Judges, and MAYS, District Judge.[*]

**JANE B. STRANCH**, Circuit Judge. Defendant Najib Shemami ("Shemami"), a naturalized U.S. citizen of Iraqi origin, met with the Iraqi Intelligence Service ("IIS") on three occasions in 2002, during which he informed the IIS about the activities of other Iraqi expatriates living in the Detroit area and provided observational information to the IIS about various military actions. These discussions eventually led to criminal charges against Shemami, all of which were dismissed in exchange for his conditional guilty plea to the charge of violating the International Emergency Economic Powers Act. Shemami asks this court to find error in the district court's decision not to allow him to present an affirmative defense of duress. For the reasons articulated below, we affirm the district court's decision.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

I.   Background

   A.   Factual Background

Shemami traveled to Iraq from Detroit, Michigan, in September 2002, November 2002, December 2002, and January 2003. In both November and December, Shemami's trips included a brief excursion from Iraq to visit Turkey before returning to Iraq. During his November trip, Shemami was arrested by Iraqi police but was released with the assistance of officials from the IIS. Shemami alleges that these trips were humanitarian in nature and that he took money, clothing and medicine to family friends in Iraq. The government alleges that Shemami operated a business for profit by smuggling money and goods into Iraq during the U.S. embargo.

While in Iraq, Shemami had several run-ins with the IIS during which he supplied the IIS with sensitive information, primarily regarding various Iraqi expatriates living in the United States. As early as September 19, 2002, Shemami met with IIS officials and told them about the Federal Bureau of Investigation's ("FBI") interest in his trips to Iraq and Turkey. On December 19, 2002, Shemami gave the IIS information about four Iraqi-Americans who he claimed were guides for the U.S. military in Iraq. He also told the IIS about possible candidates for the Iraqi presidency after the U.S. invasion. On December 28, 2002, Shemami gave the IIS details of his interview by the FBI regarding a specific Iraqi expatriate living in the United States. On December 29, 2002, Shemami provided information about military operations he had observed in Turkey. Shemami gave a final report, which is not part of the indictment, to the IIS on his trip to Iraq in January 2003.

Subsequent to his indictment, Shemami told the FBI that he had provided certain information to the IIS, but that he did so "because he had to." He noted his November 2002 arrest while in Iraq and stated that he was blindfolded and taken to an unknown location, and warned by Iraqi police officers not to carry large sums of money into the country.

### B. Procedural Background

Shemami was charged in a four-count indictment: (1) Conspiracy in violation of 18 U.S.C. §§ 371, 951(a); (2) Acting as a Foreign Agent without Notifying the Attorney General in violation of 18 U.S.C. § 951(a)); (3) Violating the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq.; and (4) False Statements to the FBI in violation of 18 U.S.C. § 1001(a)(2).

In anticipation of trial, the government made a motion in limine to preclude Shemami from presenting a duress defense, which was subsequently denied without prejudice pending discovery. The district court later granted the renewed motion to exclude evidence of duress. Shemami then entered into a Rule 11 plea agreement with the government, pleading guilty only to Count Three, the IEEPA violation, conditioned on his ability to appeal the district court's grant of the government's motion in limine on the question of duress.

The district court accepted Shemami's guilty plea and sentenced him to incarceration within the guidelines range. Shemami now argues that the trial court's exclusion of evidence in support of an affirmative defense of duress deprived him of his Sixth Amendment right to present a defense.

## II. Analysis

### A. Standard of Review

"Whether a defendant has established a prima facie case of duress is a question of law, and on review, we consider it de novo." *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005).

### B. Shemami Has Failed to Make a Prima Facie Showing of Duress

This Circuit has established a five-element test for establishing an affirmative defense of duress:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that the defendant had not recklessly or negligently placed himself

> in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and] (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Johnson*, 416 F.3d at 468.

In order to present this defense to the jury, the defendant must present colorable evidence of each element of the test. If the defendant's evidence "supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *Id*. (quoting *United States v. Bailey*, 444 U.S. 394, 416 (1980)) (internal quotations omitted). Offering evidence of the defense is proper "if the defendant produces evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the . . . five requirements is met." *United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008).

In the instant case, the trial court allowed Shemami a pre-trial opportunity to proffer evidence in support of his duress defense, as well as a second opportunity to supplement that proffer. The evidence that Shemami would present at trial consisted of the following:

1. His own testimony, including a statement that he was imprisoned by the IIS approximately 40 years ago and tortured during his captivity;

2. Documentary evidence in the form of a Coalition Provisional Authority Order dissolving the Iraqi Intelligence Service;

3. A video depicting atrocities carried out by the Iraqi regime obtained by a research institute;

4. Two History Channel videos on Saddam Hussein's regime in Iraq;

5. Testimony of Sandra Mackey, a proposed expert on the Middle East;

  6.  Anecdotal testimony of two Iraqi-Americans about conditions in Iraq; and

  7.  Cross-examination of two witnesses proposed by the prosecution, a former IIS official and a former Department of Defense official.

Despite this proffer, Shemami has failed to establish at least one essential element of the duress test. In particular, the voluntary nature of Shemami's trips to Iraq tends to negate any evidence he has proffered of elements two, three, and five of the *Johnson* test.[1] Shemami offers no explanation as to why he continued to return to Iraq and place himself in harm's way even after run-ins with the IIS, nor does Shemami make any allegation that the IIS had an ability to reach him in the United States. Somewhat surprisingly, Shemami's brief to this Court explains the real reason he gave the IIS information about fellow expatriates - that he had personal squabbles with those individuals and wanted revenge - not because he was afraid of retribution by the IIS.

The voluntary trips weigh against Shemami with particular force, as "the keystone of the [duress] analysis is that the defendant must have no alternative - either before or during the event - to avoid violating the law." *Ridner*, 512 F.3d at 850 (citing *United States v. Singleton*, 902 F.3d 471, 473 (6th Cir. 1990)). In this case, Shemami could have avoided violating the law by simply not returning to Iraq, particularly in December 2002, after his alleged November arrest. However, Shemami did return, forgoing a chance to avoid the criminal act and the harm he allegedly feared, and recklessly placing himself in a situation in which it was probable the IIS would seek information from him again.

Finally, it is worth noting that the duress test outlined in *Johnson* contemplates the proffer of evidence specific to the individual defendant. *Johnson*, 416 F.3d at 468 ("that *defendant* was

---

[1] In fact, the burden of proving duress as an affirmative defense is placed on the defendant precisely because "consciously performed acts are presumed voluntary." *Vance v. Terrazas*, 444 U.S. 252, 268 (1980) (quoting *Nishikawa v. Dulles*, 356 U.S. 129, 144 (1958)).

under . . ."; "that *the defendant* was not . . .") (emphasis added). Shemami, for the most part, presents generalized evidence about the conditions in Iraq at the time in question and about the harsh tactics used by the IIS against the general population. Other than his own proposed testimony, he has proffered no evidence of how the IIS treated or threatened to treat him. While that testimony must not be discounted, it is insufficient in this case to satisfy every element of the *Johnson* test.

Having established that Shemami did not make out a prima facie case of duress, we are left with Shemami's argument that his constitutional rights were violated by the exclusion. Evidentiary rules, properly applied, typically pass muster under constitutional scrutiny in light of the defendant's right to present a defense.[2] "Rules excluding evidence do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purpose they are designed to serve." *Boggs*, 226 F.3d at 743 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *see also Lakin v. Stine*, 80 F. App'x 368, 380-81 (6th Cir. 2003) (dissent).

Shemami has not argued that the *Johnson* test is an arbitrary formulation of duress or that the results of its application are somehow disproportionate to the purpose it is designed to serve. Shemami simply argues that, "[w]here a defendant claims an affirmative defense, and that defense finds some support in the evidence and in the law," the defendant is entitled to present that theory of defense to the jury. That is not true where a properly applied evidentiary rule authorizes the exclusion. Shemami fails to satisfy the evidentiary rule governing the presentation of a duress defense, as his claimed duress defense does not have sufficient support in the evidence he proposed to warrant burdening a jury with it.

---

[2]"The right to present a complete and meaningful defense emerges from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment." *Boggs v. Collins*, 226 F.3d 728, 743-44 (6th Cir. 2000) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) and *Chambers v. Mississippi*, 410 U.S. 284, 302 (1974)).

### III. Conclusion

The decision to exclude evidence of duress did not violate Shemami's constitutional right to present a defense. Therefore, we affirm the district court's decision to exclude evidence of an affirmative defense of duress.

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Leonard Green<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 29, 2011

Mr. Michael C. Martin
 and
Ms. Barbara Lynn McQuade
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. Edward C. Wishnow
Law Office
240 Daines
Birmingham, MI 48009

Re: Case No. 09-1784 , *USA v. Najib Shemami*
Originating Case No. : 07-20160-001

Dear Counsel,

  The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Sue Burlage
Case Manager
Direct Dial No. 513-564-7012

cc: Mr. David J. Weaver

Enclosure

Mandate to issue